UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD MATHIS,

        Plaintiff,

v.

UNKNOWN SUDHIR, *et al.*,

        Defendants.
_____/

Case No. 1:13-cv-187

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Bhamini Sudhir, M.D.'s "Motion to dismiss for failure to state a claim or, alternatively, for partial summary judgment for failure to exhaust administrative remedies" (docket no. 11) and defendant Kenneth Jordan M.D.'s "Motion to dismiss for failure to state a claim or, alternatively, for partial summary judgment for failure to exhaust administrative remedies" (docket no. 15).

    **I.**    **Background**

Plaintiff's complaint named two defendants, Dr. Sudhir and Dr. Kenneth Jordan. Compl. (docket no. 1). The complaint was originally filed in the Eastern District of Michigan, and later transferred to this district because the cause of action arose within the geographical confines of the Western District of Michigan. *See* Order Transferring Case (docket no. 4). The complaint contains the following allegations.

Plaintiff is a state prisoner confined by the MDOC at the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan. Compl. at ¶ 4. Plaintiff developed a problem producing urine in or about February 2012. *Id.* at ¶ 5. According to plaintiff, "[h]e has complained about his pain and suffering to both Defendant Doctors with no adequate pain relief." *Id.* Plaintiff's claims are based upon the following allegations.

On or about March 17, 2012, plaintiff was sent to the LCF health care service for emergency treatment because he had difficulty producing urine which caused him severe pain. *Id.* at ¶ 7. At that time, plaintiff saw a nurse who attempted to insert a catheter into the stem of his penis. *Id.* at ¶ 8. However, the catheter would not go in all the way to release the urine. *Id.* Dr. Sudhir advised plaintiff that he had a "stricture" and needed to be sent out of LCF for treatment. *Id.*

On March 21, 2012, plaintiff was again sent to the health care services where a catheter was placed into his penis stem to remove the urine which allowed him to go to sleep. *Id.* at ¶ 9. However, contrary to Dr. Sudhir's earlier statement, plaintiff was not sent to an outside facility for treatment. *Id.* at ¶ 10. Rather, the next day, Dr. Sudhir told plaintiff "that something else was the problem and she would not authorize any more treatment other than providing [p]laintiff with a different medication." *Id.* Plaintiff was treated by four different types of medications, none of which worked or relieved the pain. *Id.* at ¶ 11. Despite the medication, he could not produce urine and remained in severe pain and suffering. *Id.*

On May 16, 2012, plaintiff saw Dr. Jordan regarding his problem urinating. *Id.* at ¶ 16. At that time, Dr. Jordan told plaintiff that "sometime [sic] there are things that cannot be fixed, and you simply have to deal with it." *Id.* Sometime in May 2012, plaintiff was referred to an outside specialist. *Id.* at ¶ 12.

On June 7, 2012, the specialist, a nephrologist,[1] requested that a cystoscope[2] be performed. *Id.* at ¶ 12. On June 8, 2012, plaintiff was sent to an urologist[3] and told that he would be back in two weeks for treatment. *Id.* at ¶ 17.

The cystoscope test was completed on August 6, 2012, with recommendations for medications based on the test results. *Id.* at ¶ 12. Plaintiff alleged that on the same date, he went to an urologist who told plaintiff that he did not have a stricture. *Id.* at ¶ 18. Plaintiff was told that he had prostate problems, needed a biopsy, needed blood tests, and was given medication for his prostate problem. *Id.* It is unclear from the complaint who performed the cystoscope.

Plaintiff apparently underwent laboratory tests, after which he informed Dr. Sudhir that the medication was not working and he was still in pain and unable to produce a flow of urine. *Id.* at ¶ 13. Dr. Sudhir subsequently increased the dosage of the medication. *Id.*

On September 14, 2012, plaintiff informed Dr. Sudhir that the medication was still not working because he was in pain and could not produce a flow of urine. *Id.* at ¶ 14. Plaintiff "was told" to keep taking the medication because he had not been taking it long enough for it to work effectively. *Id.*

---

[1] A nephrologist is an expert in the study of nephrology, which is defined as "scientific study of the kidney, its anatomy, physiology, pathology, and pathophysiology." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 1109.

[2] A cystoscope is defined as "an endoscope for visual examination of the bladder." *Dorland's* at p. 421.

[3] A urologist is a specialist in the study of urology, which is defined as "that branch of medical which concerns itself with the urinary tract in both male and female, and with the genital organs in the male." *Dorland's* at p. 1782.

On September 14, 2012, plaintiff saw Dr. Jordan who told plaintiff that he had an obstruction from previous sexually transmitted disease (STD) and that he had to deal with it. *Id.* at ¶ 19.

On October 24, 2012, plaintiff saw Dr. Sudhir, who ordered x-rays, labs, and again adjusted his medication. *Id.* at ¶ 15. Plaintiff stated that he saw Dr. Jordan on that same day and that Jordan gave plaintiff medication "to relieve the straining when trying to produce urine" and told plaintiff that "there was no cure." *Id.* at ¶ 20. Plaintiff also alleged that "[f]ollowing the x-ray" Dr. Jordan told plaintiff that he did not care about plaintiff calling home to "mummy" and that plaintiff "would just have to deal with the problem." *Id.* at ¶ 21.

Dr. Sudhir saw plaintiff on October 31, 2012, at which time more labs were ordered and his medications were increased, causing a side effect of constipation. *Id.* According to plaintiff, Dr. Sudhir did not tell him "what side effect he would encounter with this medication." *Id.*

On January 16, 2013, Dr. Jordan told plaintiff that he did not have a prostate issue even though the medications he had been given were for prostate problems. *Id.* at ¶ 22. Dr. Jordan advised plaintiff that he had a "bladder neck obstruction." *Id.* Nevertheless, Dr. Jordan kept prescribing medications for the prostate problem which Jordan told plaintiff "he did not have." *Id.* at ¶ 23.

In summary, plaintiff alleged that neither Dr. Sudhir nor Dr. Jordan properly diagnosed his medical problem "and as a result of the lack of treatment [p]laintiff is still suffering from the lack of producing urine from his body in a natural manner." *Id.* at ¶ 24.

Plaintiff set forth eight causes of action in his complaint. In Count One, plaintiff alleged that Dr. Sudhir was deliberately indifferent to his serious medical needs when the doctor

4

delayed in treating his urinary problem "which delay caused further harm and [p]laintiff had to be seen within a one week period." *Id.* at ¶ 27. In Count Two, plaintiff alleged that Dr. Sudhir's failure to properly diagnose his condition and her action of prescribing "numerous medications to cover up her failure to diagnose" violated his constitutional right to receive medical treatment. *Id.* at ¶ 28. In Count Three, plaintiff alleged that Dr. Jordan delayed plaintiff's treatment "when he learned that [p]laintiff was suffering severe pain and could not produce a flow of urine to relieve the pain in his lower stomach." *Id.* at ¶ 29.

In Count Four, plaintiff alleged that Dr. Jordan was deliberately indifferent to his serious medical needs. Plaintiff's claim against Dr. Jordan does not appear to track with the allegations of his complaint and will be reproduced verbatim:

> The acts of commission of Defendant Doctor Jordan as described above constitutes deliberate indifference when he learned of the pain and suffering of Plaintiff, after being seen by an outside Specialist on August 08, 2012, who determined that Plaintiff suffered "Prostrate" problems, but still insisted that Plaintiff had an "Obstriction" [sic] from a previous STD and that he had to deal with it on September 04, 2012."

*Id.* at ¶ 30.

In Count Five, plaintiff alleged that defendants engaged in a conspiracy to deprive him of his constitutional right to receive adequate medical treatment in violation of 42 U.S.C. §§ 1983 and 1985. *Id.* at ¶ 31. In Count Six, plaintiff alleged that defendants "intentionally misdiagnosed" his condition and prescribed "unnecessary medication" which caused plaintiff "severe constipation." *Id.* at ¶ 32. In Count Seven, plaintiff alleged that defendants deprived him of his constitutionally protected civil rights under 42 U.S.C. § 1983 when they delayed in providing treatment to plaintiff causing him further medical health problems. *Id.* at ¶ 33. Finally, in Count Eight, plaintiff alleged that defendants were deliberately indifferent to his serious medical needs

5

"when they failed to properly diagnose, treat, or cause treatment for his urinary condition, and after they both noted their erroneous diagnoses, did not correct the erroneous diagnosis, but instead, provided medication for this erroneous diagnosis without explaining the side effects of the medication which constitute[s] a lack of medical treatment." *Id.* at ¶ 34.

Plaintiff seeks compensatory damages, punitive damages, and injunctive relief, asking that the Court issue an order that defendants "provide a proper diagnosis" of that defendants allow a thorough medical examination and advice from a specialist in the field of urology with regard to the medical treatment necessary to combat plaintiff's pain and suffering. *Id.* at p. 8.

**II.     Defendants' motion to dismiss**

**A.     Legal Standard**

Defendants seek dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely

6

> consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

It is well established that "*pro se* complaints are held to even 'less stringent standards than formal pleadings drafted by lawyers.'" *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979). Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Discussion

It is well established that an inmate has a cause of action under § l983 against prison officials for deliberate indifference to his serious medical needs, since the same constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively

7

harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. Thus,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106.

"[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). *See Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992) ("the Eighth Amendment does not apply to claims based on inadvertent failure to provide adequate care, negligent misdiagnosis, or an inmate's difference of opinion with medical personnel regarding diagnosis or treatment"). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In addressing Eighth Amendment claims, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Here, plaintiff does not allege that he had a complete denial of medical care. Rather, plaintiff alleged that he received substantial treatment from March 17, 2012 through January 16, 2013: defendants examined plaintiff multiple times at LCF; defendants prescribed plaintiff medications, which they adjusted over time; plaintiff was referred to two specialists (a nephrologist and a urologist); and plaintiff underwent a cystoscope test, was given one or more x-rays, and underwent various laboratory tests.

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*, 537 F.2d at 860 n. 5. Like many inexperienced plaintiffs who disagree with defendants' medical judgment and want to

9

have treatment contrary to that judgment, plaintiff fails to appreciate that this disagreement does not rise to the level of a federal constitutional claim. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment"). Unfounded claims of a conspiracy layered upon the top of the rest of the claims of wrongdoing here add nothing more to plaintiff's complaint.

Here, plaintiff's complaint falls short of stating a cause of action for deliberate indifference based upon the alleged inadequate treatment and misdiagnosis. Allegations of medical malpractice or negligent diagnosis and treatment generally do. *See Estelle*, 429 U.S. at 106. There is no basis to depart from this general rule in this case, where defendants repeatedly treated plaintiff's condition, prescribed him medication, referred him to specialists and performed various diagnostic tests. Plaintiff's experience with defendants is not so different from the experience of non-prisoners who undergo multiple and sometimes lengthy diagnostic tests and medical treatments for chronic medical conditions by medical personnel who are not always in agreement. Accordingly, with one exception, plaintiff's claims with respect to the alleged inadequate treatment and misdiagnosis should be dismissed.

The only claim which merits additional review is plaintiff's claim that Dr. Sudhir delayed treatment when plaintiff first suffered his symptoms on March 17, 2012. Plaintiff alleged that at that time, Dr. Sudhir told plaintiff that he had a stricture and needed to be sent off-site for treatment. As alleged, plaintiff was not sent off site, nor did he receive additional treatment until March 21, 2012. Based on plaintiff's allegations, this delay of four days is sufficient to state a cause of action. "When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutionality infirmity." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir.2004).[4] Viewing plaintiff's allegations in the light most favorable to him, and accepting them as true, plaintiff has stated a cause of action with respect to the alleged delay in treatment from March 17, 2012 through March 21, 2012. Accordingly, this claim directed at Dr. Sudhir, survives.

### III. Defendants' motion for summary judgment

#### A. Legal Standard

In addition, defendants have moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to all claims asserted against Dr. Jordan and most of the claims asserted against Dr. Sudhir. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[4] As alleged in the complaint, plaintiff's condition on March 17, 2012, was sufficiently obvious that Dr. Sudhir should have known that a delay in the treatment of that medical condition could result in a serious injury to plaintiff and rise to the level of a constitutional violation. *Cf. Napier v. Madison County*, 238 F.3d 739, 742 (in determining whether an alleged violation is sufficiently serious, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed").

11

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type

of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

13

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Dr. Jordan

There is no evidence before the Court that plaintiff exhausted a grievance against Dr. Jordan prior to filing his complaint on January 30, 2013. On the contrary, Richard D. Russell, Manager of the Grievance Section of the MDOC, performed a review of the MDOC's database relevant to step III grievance appeals, and found that through May 6, 2013, plaintiff had appealed only one grievance through step III relating to urological condition, grievance no. LCF-12-03-364-12d3 ("364"). *See* Affidavit of Richard D. Russell at ¶¶ 1 and 12 (docket no. 15-1). This grievance is directed against Dr. Sudhir, lists an incident date of March 17, 2012 and appears related to plaintiff's claim that Dr. Sudhir failed to send him out for treatment. *See* Grievance no. 364 (docket no. 15-1 at p. 44). This grievance, however, does not name Dr. Jordan.

In his response to defendant's motion, plaintiff has submitted a step III grievance response with respect to a different grievance, LCF-2012-10-1147-12d3 ("1147"). *See* Grievance 1147 (docket no. 16-2).[5] Plaintiff has also submitted a step II appeal for grievance 1147, which lists an incident date of October 24, 2012. *Id.* Because plaintiff chose not to provide the Court with a

---

[5] The Court notes that plaintiff's response included an affidavit which set forth a number of facts unrelated to defendants' motions for summary judgment. *See* Plaintiff's Affidavit (docket no. 16-1). Some of the facts set forth in the affidavit refer to medical treatment received after plaintiff filed this action. *See* Plaintiff's Aff. at ¶¶ 15-17.

14

copy of the original grievance, there is no way to determine whether Dr. Jordan was named in that grievance. However, even if plaintiff had named Dr. Jordan, he did not exhaust this grievance through step III until sometime in May 2013, approximately three months after he filed this action. *Id.*

In his response, plaintiff claims that Mr. Russell committed "a potential fraud upon the court" because Russell's affidavit failed to acknowledge the step III response to grievance 1147. It is unclear exactly when grievance 1147 was exhausted, since it contains three separate dates: it gives May 2, 2003 as the response of the "Bureau of Health Care Services"; it was signed by S. Laughhunn, RN, on May 2, 2003; and it was mailed by Mr. Russell on May 8, 2013. Grievance 1147 (docket no. 16-2 at p. 5). Mr. Russell signed his affidavit on May 6, 2013. Based on this record, it is unclear whether the step III response was considered denied when it was dated and signed on May 2, 2003, or when it was mailed by Mr. Russell on May 8, 2003. Thus, none of the parties have provided specific guidance to the Court on this issue. However, even if the Court assumes that grievance 1147 was exhausted on the earliest potential date, May 2, 2003, plaintiff did not exhaust the grievance prior to filing this action on January 30, 2013.

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999).

15

Based on this record, plaintiff did not properly exhaust a grievance against defendant Dr. Jordan prior to filing this action. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645. Accordingly, defendant Jordan's motion for summary judgment should be granted as to all claims alleged against him.

### 4. Dr. Sudhir

Dr. Sudhir relies on the same documentation in seeking summary judgment for lack of exhaustion. The record demonstrates that plaintiff properly exhausted grievance 364 on or about July 30, 2012, Grievance 364 (docket no. 15-1 at p. 41), and that this grievance pertained to his claim that Dr. Sudhir improperly delayed treatment from March 17, 2012 through March 21, 2012. However, plaintiff did not file any grievance against Dr. Sudhir with respect to the alleged claim of subsequent inadequate treatment or misdiagnosis of his condition. Based on this record, plaintiff did not properly exhaust a grievance against defendant Dr. Sudhir with respect to any claim other than the alleged delay of treatment in March 2012. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645. Accordingly, Dr. Sudhir's motion for summary judgment should be denied as to the claim for delayed treatment and granted as to all other claims.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Sudhir's motion to dismiss and for partial summary judgment (docket no. 11) be **DENIED** with respect to the alleged delay in treatment from March 17, 2012 through March 21, 2012, and **GRANTED** in all other respects. I further recommend that Dr. Jordan's motion to dismiss and for partial summary judgment

(docket no. 15) be **GRANTED** and that plaintiff's claims against him be **DISMISSED** with prejudice.


Dated: February 5, 2014             /s/ Hugh W. Brenneman, Jr.
                                    HUGH W. BRENNEMAN, JR.
                                    United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).